1

2

3

4                                                              **E-FILED on**  8/13/2008

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                       FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                                  SAN JOSE DIVISION

11

12   In re MIPS TECHNOLOGIES, INC.                 No. C-06-06699 RMW
     DERIVATIVE LITIGATION
13                                                 ORDER GRANTING NOMINAL
     _____     DEFENDANT'S MOTION TO DISMISS
14
                                                   **[Re Docket No. 56]**
15   This Document Relates To:

         ALL ACTIONS.
16

17   _____

18
          Lead plaintiff Timmy Rollins[1] ("Rollins") brings the present action as a derivative suit on
19
     behalf of MIPS Technologies, Inc. ("MIPS") against certain current and former directors and
20
     officers of MIPS.  Nominal defendant MIPS moves to dismiss the amended consolidated shareholder
21
     derivative complaint[2] ("ACC") for failure to make demand against the company or to plead with
22
     particularity that demand should be excused.  Rollins opposes the motion.  The court has read the
23
     moving and responding papers and considered the arguments of counsel presented at a hearing on
24

25   _____

26   [1]  Former lead plaintiff Joseph Carco withdrew on March 28, 2008.  C-06-06699-RMW Doc. 55.

27   [2]  This is the second consolidated shareholder complaint.  The Court dismissed the original
     complaint and granted leave to amend on January 11, 2008.  *See In re MIPS Technologies, Inc.*
28   *Derivative Litigation*, 542 F. Supp. 2d 968 (N.D. Cal. 2008).  The amended complaint that is the
     subject of this motion was filed February 20, 2008.

1   July 18, 2008.  For the reasons set forth below, the court GRANTS MIPS's motion to dismiss

2   without leave to amend.

3                                      **I.  FACTS**[3]

4        Rollins asserts violations of federal securities and state laws against certain current and

5   former directors and officers of MIPS arising from stock option backdating.  ACC ¶¶ 1, 2.

6   Specifically, Rollins alleges that officers and directors of MIPS manipulated the grant dates and

7   associated documentation of stock options used to compensate MIPS employees and directors.  *Id.*

8   ¶¶ 3, 5.  Rollins alleges that the various illegal activities occurred between 1998 and 2006, which is

9   the "relevant period" for this lawsuit.  *Id.* ¶ 2.  Because Rollins must demonstrate that making a

10  demand on the board of directors would have been futile (a factually-intensive inquiry), the details

11  of MIPS's corporate structure, history, and transactions follow.

12       **A.        Structure of the Board of Directors**

13       MIPS Technologies, Inc. is a Delaware corporation with its principal executive offices in

14  Mountain View, California.  ACC ¶ 7.  MIPS develops standardized processor architectures and

15  cores for use in a variety of electronic applications.  *Id.*  Its common stock is listed on the Nasdaq

16  under the stock symbol MIPS.

17       The MIPS board has two committees relevant to this motion.  The Option Administration

18  Committee reviewed and approved stock option grants from 1998 until November 2000, when it was

19  merged with the Compensation Committee.  *Id.* ¶ 67.  The Compensation Committee now oversees

20  option grants, as well as its traditional role of reviewing officer performance and compensation.  *Id.*

21  ¶¶ 68, 69.

22       At the time this suit was filed, MIPS's board of directors consisted of defendants Anthony B.

23  Holbrook, John E. Bourgoin, Robert E. Herb, Fred M. Gibbons, Benjamin A. Horowitz, Kenneth L.

24  Coleman, and William M. Kelly.  *Id*. ¶¶ 32, 181.  Holbrook has been a MIPS director since July

25  1998 and has served as the board's chairman since August 2003.  *Id.* ¶ 40.  Bourgoin has been

26  President of MIPS since September 1996, a director since May 1999, and has served as MIPS's CEO

27

28  ───────────────
   [3]  Additional facts not related to this motion can be found in the previous order.  *See In re MIPS*, 542
   F.Supp.2d at 970-973.

   ORDER GRANTING NOMINAL DEFENDANT'S MOTION TO DISMISS—06-06699 RMW
   RSM                                          2

**United States District Court**
For the Northern District of California

1  since February 1998. *Id.* ¶ 41.  Gibbons has been a director since 1998 and sat on the Option

2  Administration Committee from 1998 to 2000, the Audit Committee from 1999 to 2005, and on the

3  Compensation Committee from 1999 to the present. *Id.* ¶ 54.  Coleman has been a director since

4  1998, serving on the Compensation Committee from 1999 until the present. *Id.* ¶ 56.

5         The committee membership details are summarized in the following table:

|  | Compensation Committee | Option Admin. Committee |
|---|---|---|
| FY99 | Coleman, Gibbons, Holbrook | Gibbons, Holbrook |
| FY00 | Coleman, Gibbons, Holbrook | Gibbons, Holbrook |
| FY01 | Coleman, Gibbons, Holbrook | *merged into Compensation Committee* |
| FY02 | Coleman, Gibbons, Holbrook | |
| FY03 | Coleman, Gibbons, Horowitz | |
| FY04 | Coleman, Gibbons, Horowitz | |
| FY05 | Coleman, Gibbons, Horowitz, Herb | |

*See id.* ¶ 71.  The composition of the Compensation Committee only changed in 2003 when

Horowitz replaced Holbrook and in 2005 when the committee expanded to include Herb.  John

Bourgoin, MIPS's CEO, has never been a member of any of the relevant committees.

       According to MIPS's certificate of incorporation, MIPS directors are not liable for any

breach of fiduciary duty, except for breaches of the duty of loyalty, actions involving intentional

misconduct or actions taken "not in good faith," and transactions from which they derive an

improper personal benefit.  MIPS Techs., Inc., Current Report (Form 8-K), at Ex. 3.1, Art. IX (Nov.

12, 2003) (reproducing MIPS certificate of incorporation); *see also* 8 Del. C. § 102(b)(7).[4]


**B.     MIPS's Investigation Into Backdating, Restatement, and Remedial Action**

       Concerns about stock option backdating began with the now-famous *Wall Street Journal*

article of March 18, 2006 reporting academic research suggesting that various companies were

suspiciously lucky in selecting their option grant dates.  During a July 26, 2006 earnings call,

[4]  Public records, such as SEC filings, are properly the subject of judicial notice, and routinely
considered in deciding a motion to dismiss in a securities case.  *E.g.*, *In re CNET Networks, Inc.*,
483 F. Supp. 2d 947, 953-54 (N.D. Cal. 2007); *In re Copper Mountain Sec. Litig.*, 311 F. Supp. 2d
857, 865 (N.D. Cal. 2004); *In re Calpine Sec. Litig.*, 288 F. Supp. 2d 1054, 1076 (N.D. Cal. 2003).

**United States District Court**
For the Northern District of California

1   Bourgoin was asked about possible backdating at MIPS.  ACC ¶ 105.  Bourgoin denied any

2   backdating, stating "we have done an internal review all the way back to our inception as a public

3   company back in 1999 and we found no backdating, so you know our audit committee looks at that

4   stuff very carefully."  *Id*.  On August 30, 2006, MIPS announced that it formed a special committee

5   of independent directors to investigate its option granting practices.  *Id*. ¶ 107.  This investigation

6   delayed the filing of MIPS's Form 10-K for 2006 and jeopardized MIPS's listing on Nasdaq.  *Id.* ¶¶

7   107-108.  On October 25, 2006, MIPS announced that it had uncovered historic option grants with

8   incorrect dates.  *Id.* ¶ 109.  Accordingly, MIPS advised that its past financial statements and earnings

9   releases could not be relied upon and would need to be restated.  *Id.*

10          MIPS released further details of its investigation in its delayed Form 10-K for 2006, filed on

11   July 2, 2007.  *See* MIPS Techs., Inc., Annual Report (Form 10-K), at 26-33 (July 2, 2007).  The

12   special committee examined options grants from July 1, 1998 through June 2006.  *Id.* at 2.  The

13   review encompassed 107 granting actions and 1,849 individual grants.  *Id.* at 26.  The special

14   committee first noted that the Compensation Committee had delegated its option granting authority

15   to the former Vice President of Human Resources.  *Id.* at 27.  Of the grants, the special committee

16   concluded "hindsight was likely used by the former Vice President of Human Resources ("Lane") in

17   selecting grant dates for options granted in the period October 1998 through October 2000 and this

18   person had a lack of knowledge of the accounting rules related to the granting of options."  *Id.*  The

19   special committee found no direct evidence of backdating, but concluded that "20 out of 28 grants

20   coincided with a weekly or monthly low in our stock price during this period" and that this

21   circumstantial evidence suggested backdating had occurred from 1998 to 2000.  *Id.*  Examining the

22   individual grants, the special committee concluded that no grants to board members under the MIPS

23   Directors' stock option plan had been backdated.  *Id.*  One option grant to the CEO (who is also a

24   board member) required adjustment.  *Id.*  To be clear, MIPS admitted in its 2006 Form 10-K that

25   backdating had occurred between October 1998 and October 2000 and formally restated its financial

26   records.

27          **C.      Additional Instances of Alleged Backdating**

28          Rollins alleges that backdating at MIPS under the Long Term Compensation Plan continued

after October 2000 and "into at least 2002." ACC ¶ 111. Rollins alleges three additional options grants were backdated. First, Derek Meyer received an option grant on January 5, 2001 that was granted at the second lowest point of the month. *Id.* ¶ 111(a). Second, Mervin S. Kato received an option grant on April 3, 2001, the stock's lowest date of the month and also the lowest date of the first half. *Id.* ¶ 111(b). Third, CEO John Bourgoin received an option grant on September 17, 2004, the second lowest price of the month and lowest price for the remainder of the year. *Id.* ¶ 111(c). Rollins alleges these option grants were backdated because they occurred on "weekly or monthly low[s]" in the stock price. *Id.* ¶ 112. The complaint does not allege how many other option grants occurred in the same time period, so there is no context to determine if these grants reflect anything more than random probability. Rollins merely alleges that the three grants occurred on low dates in a month. Rollins has not alleged with specificity any backdating after 2000.

## II. ANALYSIS

Rollins did not make a demand to the MIPS board before filing this suit. ACC ¶ 32. Nominal defendant MIPS moves to dismiss because Rollins has not adequately alleged that demand would have been futile. Before reaching the issue of demand futility, the court addresses a procedural issue.

### A. Rollins's Standing

Delaware law requires a shareholder bringing a derivative suit to have been a shareholder at the time of the challenged transaction. 8 Del. C. § 327. The Federal Rules of Civil Procedure have an identical requirement, eliminating any *Erie* difficulties. Fed. R. Civ. P. 23.1(b)(1). The strict interpretation of the rule serves to prevent strike suits and to ensure that a derivative plaintiff truly acts in the corporation's best interest in bringing a claim. *Conrad v. Blank*, 940 A.2d 28, 41-42 (Del. Ch. Ct. 2007) (holding that plaintiff lacked standing to challenge stock option grants predating her ownership of the corporation's stock). The Delaware Chancery Court has repeatedly applied this rule in stock options backdating cases. *See Ryan v. Gifford*, 918 A.2d 341, 358-59 (Del. Ch. Ct. 2007) (dismissing claims that predated plaintiff's ownership); *Desimone v. Barrows*, 924 A.2d 908, 924-27 (Del. Ch. Ct. 2007) (dismissing all claims predating plaintiff's ownership).

United States District Court
For the Northern District of California

1    Rollins alleges that he became a MIPS shareholder on March 8, 2000.  ACC ¶ 38.

2    Nevertheless, Rollins purports to sue for violations throughout the alleged "Relevant Period,"

3    namely from 1998 to 2006.  *Id.* ¶ 2.  Like the prior plaintiff in this case, Rollins lacks standing to sue

4    for any violations prior to March 2000.  However, regardless of whether he has standing to sue,

5    events occurring before his ownership are relevant to the demand futility analysis.  *See Melzer v.*

6    *CNET Networks, Inc.*, 934 A.2d 912, 918-20 (Del. Ch. Ct. 2007) (permitting shareholders to

7    examine books and records predating ownership to search for evidence to support their demand

8    futility allegation).

9        **B.       Demand Futility**

10       Delaware law requires a derivative plaintiff to first make a demand on the board of directors

11   to address the shareholder's concerns.  *Ryan*, 918 A.2d at 351-52.  If the shareholder chooses not to

12   make a demand, the shareholder must plead with particularity why such a demand is excused.  Fed.

13   R. Civ. P. 23.1(b)(3)(B); *see, e.g., CNET Networks*, 483 F. Supp. 2d 947.

14           **1.       Standards Governing Demand Futility**

15       Delaware law has two standards for excusing demand.  *Compare Aronson v. Lewis*, 473 A.2d

16   805, 812 (Del. 1984) *with  Rales v. Blasband*, 634 A.2d 927, 933-34 (Del. 1993).  "Where the

17   challenged transaction was not a decision of the board upon which plaintiff must seek demand," the

18   *Rales* test applies.  *E.g., Ryan*, 918 A.2d at 353.  The *Rales* test requires the plaintiff to allege

19   particular facts that "create a reasonable doubt that, as of the time the complaint is filed, the board of

20   directors could have properly exercised its independent and disinterested business judgment in

21   responding to a demand."  *Id.* at 353 (quoting *Rales*, 634 A.2d at 933-34).

22       The board in place at the time Rollins filed suit did not take any of the actions that Rollins

23   challenges.  Rollins's challenges are to options granted under the 1998 Long Term Compensation

24   Plan.  Accordingly, the court applies the *Rales* standard to decide whether demand is excused.

25   *Accord Desimone*, 924 A.2d at 927-28 (applying *Rales* where all parties agreed it applied); *Conrad*

26

27

28

**United States District Court**
For the Northern District of California

940 A.2d at 37 (applying *Rales* where the challenged transaction "was not made by the board, or even half of its members").[5]

### 2.   Whether the MIPS Board is Disinterested and Independent

To successfully plead demand futility, Rollins must demonstrate that there is a reasonable doubt that a majority of the board of directors are not disinterested and independent. *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048-49 (Del. 2004). To be clear, a director is presumed to be faithful to the corporation and able to objectively consider a demand. *Id.* at 1048. The plaintiff must show, with particularity, why that presumption is overcome with respect to a majority of the board. *Id.* at 1048-49. Accordingly, Rollins must demonstrate that there is a reasonable doubt that at least four (of seven) MIPS directors were not disinterested and independent. In determining whether Rollins has pled demand excuse, the court notes that an inquiry into a board's ability to consider a demand is context-dependent and fact-specific. *Id.* at 1049-50; *see also Desimone*, 924 A.2d at 931 (suggesting a "cautious" and "non-generic" approach to considering challenges to options practices).

Accordingly, to plead demand futility Rollins must specifically allege facts that create a reasonable doubt that a majority of directors are disinterested and independent. A substantial risk of personal liability can create a reasonable doubt about a director's disinterestedness. *Wood v. Baum*, — A.2d —; 2008 WL 2600981, *2 (Del. 2008). However, when directors are exculpated from liability for certain conduct, the plaintiff must plead particularized facts alleging a non-exculpated claim against the directors. *Id.* at *3. If directors are exculpated except for claims based on "'fraudulent,' 'illegal' or 'bad faith' conduct," then "a plaintiff must also plead particularized facts that demonstrate that the directors acted with scienter, *i.e.*, that they had 'actual or constructive knowledge' that their conduct was legally improper." *Id.*

In *Wood*, the Delaware Supreme Court upheld the dismissal of a complaint by the Court of Chancery for failure to excuse demand. *Id.* at *4. Municipal Mortgage and Equity is a LLC with a ten-member board of directors. *Id.* at *1. The operating agreement exempts directors from any

---

[5] Rollins's complaint continues to make arguments based on the "valid business judgment" standard from *Aronson*. As previously held by this court, this test is inappropriate and is therefore not addressed. *See In re MIPS*, 542 F.Supp.2d at 975-976.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

liability "except in the case of fraudulent or illegal conduct of such person." *Id*.  The complaint alleged "many violations of federal securities and tax laws but [did] not plead with particularity the specific conduct in which each defendant 'knowingly' engaged." *Id*. at *3.  When asked to identify particularized facts that would establish actual or constructive knowledge, the plaintiff identified facts falling into "four main categories: (a) the defendants executed MME's annual reports and other publicly filed financial reports; (b) the defendants authorized certain transactions; (c) five of the defendants served on MME's Audit Committee; and (d) other 'red flags'." *Id*.  None of the alleged facts were sufficient to demonstrate actual or constructive knowledge. *Id*.  Specifically, neither the execution of financial reports by directors nor membership on a committee is sufficient to establish scienter. *Id*. at *3-*4.

Paragraphs 181 to 207 comprise Rollins's allegations regarding demand futility.  At the time suit was filed, Rollins alleges the MIPS board comprised of John E. Bourgoin, Robert E. Herb, Fred M. Gibbons, Benjamin A. Horowitz, Kenneth L. Coleman, and William M. Kelly.  ACC ¶ 158. Rollins does not challenge the independence or disinterestedness of  Robert E. Herb, Benjamin A. Horowitz, or William M. Kelly.

### a.     Kenneth L. Coleman

Kenneth L. Coleman has been a MIPS director since 1998.  ACC ¶ 185.  During the relevant period, he served on the Compensation Committee. *Id*.  Rollins alleges that Coleman is not disinterested because he misled shareholders as to either the backdating of stock options or his role in reviewing compensation for Bourgoin and other MIPS executives.  Rollins relies on a series of proxy statements to raise a reasonable doubt as to whether Coleman is disinterested and independent. *Id*. ¶¶ 85, 87-89, 93-95.

Rollins alleges that Coleman repeatedly misled shareholders by signing proxy statements filed with the SEC.  Each of the three Form14A proxy statements filed in September of 1999, 2000, and 2001, stated that the Option Administration Committee determined the number of shares based on multiple criteria, and that all options to date have been granted at not less than the fair market value. *Id*. ¶¶ 87-89.  Each statement was signed by Coleman, Holbrook, Gibbons, Bourgoin and Kelly. *Id*.  The 1999 and 2000 statements also clearly stated that the Option Administration

United States District Court
For the Northern District of California

1  Committee was responsible for approving option grants. *Id.* ¶¶ 93-95. Notably, the 2000 proxy

2  statement referred directly to the grant to Bourgoin which MIPS later confessed was backdated. *Id.*

3  ¶ 95.

4      Rollins does not allege that Coleman granted or approved any options. Furthermore, Rollins

5  does not plead any facts demonstrating knowledge of backdating on the part of Coleman sufficient

6  to raise doubts that Coleman was knowingly or intentionally deceiving MIPS shareholders. A

7  director's execution of financial reports, without more, is insufficient to create an inference that he

8  had actual or constructive notice of any illegality. *Wood*, 2008 WL 2600981 at *3. The proxy

9  statements that Coleman (and the rest of the board) signed are insufficient to establish scienter, and

10  therefore cannot serve to create a "substantial threat" of personal liability that would cause one to

11  reasonably doubt Coleman's disinterestedness.

12      Rollins also contends that, as a member of the Compensation Committee, Coleman was

13  specifically charged with reviewing the stock incentive compensation of the CEO and other officers.

14  Therefore, if he was not misleading the shareholders as to backdating, he was misleading them as to

15  his execution of his duties. The Delaware Supreme Court, however, has set a high bar for director

16  oversight liability. *Stone ex rel. AmSouth Bancorporation v. Ritter,* 911 A.2d 362, 370 (Del. 2006).

17  When directors are immunized by a section 102(b)(7) provision in the certificate of incorporation, a

18  showing of bad faith conduct is essential to establish director oversight liability. *Id.* Examples of

19  acting in bad faith include:

20      where the fiduciary intentionally acts with a purpose other than that of advancing the
       best interests of the corporation, where the fiduciary acts with the intent to violate
21      applicable positive law, or where the fiduciary intentionally fails to act in the face of
       a known duty to act, demonstrating a conscious disregard for his duties.
22
*Id.* at 369. This standard for bad faith requires Rollins to allege that Coleman acted with a state of
23  mind consistent with a conscious decision to breach his duty of care. *See Desimone*, 924 A.2d at
24  935. The assertion that membership on a committee is a sufficient basis to infer scienter is contrary
25  to well-settled Delaware law. *See Wood*, 2008 WL 2600981 at *4.
26      Rollins also relies on the statements of confidential witnesses to plead facts sufficient to raise
27  doubts as to Coleman's disinterestedness. ACC ¶¶ 97-102. While the confidential witnesses appear
28  to have been in a position to have relevant information, their statements are hopelessly vague or

ORDER GRANTING NOMINAL DEFENDANT'S MOTION TO DISMISS—06-06699 RMW
RSM                                    9

United States District Court
For the Northern District of California

general.  "According to CW2, the members of the Options Administration *and/or* Compensation Committee were '*very aware of what [Lane] was doing*' with respect to stock option grants."  ACC ¶ 101 (emphasis added). "Lane, as well as other executive staff at MIPS *participated in meetings*, and were "*heavily involved*" with, the Option Administration and/or Compensation Committee during her tenure." *Id* (emphasis added).  Which members of which committee were aware of what facts?  What members of the executive staff participated to what extent in which meetings and when?  What did Lane do as part of her heavy involvement with one or more committees?  The Supreme Court has made clear that a complaint must rise "above the speculative level" and do more than "merely create[] a suspicion" in the context of standard notice pleading.  *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007) (quotations omitted).  Where, as here, the pleading rules require even more, i.e., particularized facts, these witness statements are too vague and general to be sufficient.  Demand excuse requires particularized facts, not stray inferences.

Rollins has not alleged any facts demonstrating that Coleman knew he was certifying false proxy statements while on the Compensation Committee.  Without facts establishing scienter, Rollins cannot raise a reasonable doubt as to Coleman's disinterestedness.  Consequently, he cannot show that a majority of the directors are not disinterested or independent and so the complaint must be dismissed.

### b.    Fred M. Gibbons and Anthony B. Holbrook

Fred M. Gibbons and Anthony B. Holbrook have been MIPS directors since 1998.  ACC ¶¶ 183-84.  Rollins alleges that Gibbons and Holbrook are not disinterested because they served on the Option Administration Committee during the relevant period and as such "bore the ultimate responsibility for ensuring that stock options were granted at fair market value on the date of the grant." *Id.*  Additionally, Rollins alleges that Gibbons and Holbrook "approved MIPS' falsified financial statements." *Id.*  In support of these allegations, Rollins points to the form 14A proxy statements filed in 1999, 2000 and 2001.

As with Coleman, issuing financial statements and mere membership on a committee are insufficient to demonstrate actual or constructive knowledge on the parts of Gibbons or Holbrook.  Rollins does allege, however, that Gibbons and Holbrook approved the backdated grants.  MIPS's

United States District Court
For the Northern District of California

1  internal investigation states that options-granting authority was delegated to the Vice President of

2  Human Resources, but the proxy statements signed by Gibbons and Holbrook clearly state that the

3  Option Administration Committee "approved" grants under the 1998 Long-Term Incentive Plan.

4  "Delaware law on this point is clear: board approval of a transaction, even one that later

5  proves to be improper, without more, is an insufficient basis to infer culpable knowledge or bad faith

6  on the part of individual directors." *Wood*, 2008 WL 2600981 at *3.  In a hypothetical, Vice-

7  Chancellor Strine presented a scenario in which directors could approve backdated grants without

8  knowledge of the wrongdoing:

9      [T]he compensation committee, although not acting with reasonable diligence,
       approves the option grants without realizing that the grants violate the terms of the
10     stock option plan and without realizing that the corporation is accounting for them
       improperly.  In fact, they are advised by the corporation's general counsel, HR
11     director, and CFO that the grants are appropriate under the plan.  The committee
       knew who was getting them, the incentives for performance they were intended to
12     create, and the economic terms of the options, but it did not dig into the details, such
       as the actual date of the grants or the stock's trading price on those dates, after
13     receiving reports from the key officers.

14  *Desimone,* 924 A.2d at 932.  Vice-Chancellor Strine concluded that this would be insufficient to find

15  liability.  *Id*. at 933.

16  The internal investigation by the special committee found that no directors had been involved

17  in the backdating, and the former Vice President of Human Resources had been responsible.  *See*

18  MIPS Techs., Inc., Annual Report (Form 10-K), at 26-33 (July 2, 2007).  The approval of option

19  grants, including the backdated grant to Bourgoin, is analogous to the situation described in

20  *Desimone*.  Consequently, these facts are insufficient to establish scienter for Gibbons or Holbrook,

21  and therefore insufficient to disqualify them from considering a demand.

22  **c.**   **John E. Bourgoin**

23  This court has previously held that Bourgoin should be disqualified from considering a

24  demand on the board regarding backdating because he may still stand to benefit from the backdating.

25  *In re MIPS*, 542 F. Supp. 2d at 977.

26  **C.**   **Leave to Amend**

27  Rollins has not pleaded facts sufficient to show that a majority of the board in place when the

28  action was commenced are not disinterested or independent and so has not excused his demand

ORDER GRANTING NOMINAL DEFENDANT'S MOTION TO DISMISS—06-06699 RMW
RSM                                                    11

**United States District Court**
For the Northern District of California

1   failure. Rollins has failed to allege with particularity any facts from which it could be inferred that

2   particular directors knew or should have known of accounting improprieties and any facts

3   suggesting that the board knowingly allowed or participated in a violation of law. *See Wood*, 2008

4   WL 2600981 at *4. Specifically, "what the. . . board did, when they did it, what they discussed,

5   what conclusions they reached, and why the board did or did not do anything." *Desimone,* 924 A.2d

6   at 951; *see also In re Atmel Corp.*, 2007 WL 2070299, *6 (N.D. Cal. 2007) (even when backdating

7   is "almost certain," the complaint must be dismissed unless it provides adequate detail regarding the

8   knowledge and roles of the defendants).

9       Rollins (like Carco before him) had access to tools unavailable to the traditional plaintiff as a

10  shareholder, specifically the ability to inspect corporate books and records. 8 Del. C. § 220. Despite

11  this access, Rollins failed to plead specific facts about the circumstances of backdating after multiple

12  complaints. Rollins also failed to provide detailed statements from his confidential witnesses.

13  These witness statements shed no light on the actions of the MIPS directors.

14      At the hearing the Court made clear that the complaint was largely unchanged except for the

15  witness allegations that "were really vague." Hr'g Tr. 2:15-3:3 (July 18, 2008). The court stated that

16  "[w]hether leave is granted really depends on whether the plaintiffs feel that they can add more

17  specifics to show the interest of the board members other than [Bourgoin]." *Id*. at 3:6-10. In

18  response, Rollins's counsel identified the proxy statements concerning the Option Administration

19  Committee, the fact that Coleman was the chairman of the Compensation Committee and the fact

20  that the company changed its option granting procedures in November 2000. *Id*. at 4:11-8:2. The

21  arguments concerning committee membership or proxy statements are unchanged from the

22  complaint and are of the type rejected by the Delaware Supreme Court in *Wood*. Rollins's counsel

23  did not acknowledge the confidential witnesses or suggest that they could provide more complete or

24  specific statements. He did not set forth any new facts that could be added.

25      "Dismissal without leave to amend is improper unless it is clear that the complaint could not

26  be saved by any amendment**.**" *Polich v. Burlington Northern, Inc.*, 942 F.2d 1467, 1472 (9th Cir.

27  1991). Where the plaintiff fails to set forth any additional facts that could save the complaint,

28  however, dismissal with prejudice is appropriate. *In re Silicon Graphics, Inc.*, 183 F.3d 970, 991

ORDER GRANTING NOMINAL DEFENDANT'S MOTION TO DISMISS—06-06699 RMW
RSM                                                         12

(9th Cir. 1999); *accord In re VeriFone*, 11 F.3d 865, 872 (9th Cir. 1993).  In *Silicon Graphics*, the court upheld the dismissal with prejudice of a derivative shareholder suit for failure to excuse demand when the plaintiff failed to set forth any facts he could add to the complaint.  *In re Silicon Graphics, Inc.*, 183 F.3d at 991.  Similarly, Rollins has failed to set forth additional facts he could plead in either his briefing or at argument.  Consequently, dismissal without leave to amend is appropriate.  *See also In re Hansen Natural Corp.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007) (dismissing without leave to amend the first complaint where the plaintiff failed to offer any additional facts that could be alleged in an amended complaint).

### III.  ORDER

For the foregoing reasons, the court GRANTS MIPS's motion to dismiss without leave to amend.

DATED:      8/12/2008

*Ronald M Whyte*
_____
RONALD M. WHYTE
United States District Judge

**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Notice of this document has been electronically sent to:**

**Counsel for Plaintiffs:**

| | |
|---|---|
| Robert Bramson | rbramson@bramsonplutzik.com |
| Bradley A. Dirks | bdirks@sbtklaw.com |
| Travis E. Downs , III | travisd@csgrr.com |
| Lawrence Timothy Fisher | ltfisher@bramsonplutzik.com |
| John K. Grant | johnkg@csgrr.com |
| Tara Puhua Kao | tkao@sbtklaw.com |
| Alan R Plutzik | aplutzik@bramsonplutzik.com |
| Kathryn Anne Schofield | kschofield@bramsonplutzik.com |
| Michael C. Wagner | mwagner@sbtklaw.com |
| Shawn A. Williams | shawnw@csgrr.com |
| Eric L. Zagar | ezagar@sbtklaw.com |

**Counsel for Defendants:**

| | |
|---|---|
| Kalama M. Lui-Kwan | klui-kwan@fenwick.com |
| Gaurav Mathur | gmathur@fenwick.com |
| Kevin Peter Muck | kmuck@fenwick.com |
| Susan Samuels Muck | smuck@fenwick.com |
| Felix Shih-Young Lee | flee@fenwick.com |
| Jay L. Pomerantz | jpomerantz@fenwick.com |
| Christopher James Steskal | csteskal@fenwick.com |

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:** _____8/13/2008_____           _____TSF_____
                                          **Chambers of Judge Whyte**

ORDER GRANTING NOMINAL DEFENDANT'S MOTION TO DISMISS—06-06699 RMW
RSM                                                    14